NEW QUINCY MINING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56331. Promulgated July 27, 1937.

*Walter G. Moyle, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

380

[redacted]

**OPINION.**

HILL: The first question for determination is whether petitioner is entitled to include as part of its capitalized development costs recoverable through depletion an amount of $122,239.19, representing money embezzled or misappropriated by one of its officers in years prior to 1926. This amount is made up of the following items: $22,316.55 proceeds of sales of unauthorized stock; $89,441.78 collected as assessments on such stock; and $10,480.86 of other funds of petitioner, being the amount shown in the findings of fact which were embezzled or misappropriated by petitioner's secretary.

Petitioner's mine was in the development stage prior to March 1928, and petitioner contends that the items enumerated should be included in its capitalized development costs in order that they may be recovered through deductions for depletion. Respondent contends to the contrary.

Section 23 (1) of the Revenue Act of 1928 is, so far as pertinent here, as follows:

(1) *Depletion.*—In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. * * *

Article 242 of Regulations 74, promulgated by the Commissioner under the Revenue Act of 1928, is applicable to this question and is as follows:

ART. 242. *Allowable capital additions in case of mines.*—(a) All expenditures in excess of net receipts from minerals sold shall be charged to capital account recoverable through depletion while the mine is in the development stage. The mine will be considered to have passed from a development to a producing status when the major portion of the mineral production is obtained from workings other than those opened for the purpose of development, or when the principal activity of the mine becomes the production of developed ore rather than the development of additional ores for mining.

(b) Expenditures for plant and equipment, not including expenditures for maintenance and for ordinary and necessary repairs, shall be charged to capital account recoverable through depreciation.

We think it a fair construction of the meaning of such regulation that expenditures which may be included in the capitalized development costs of a mine must be expenditures made for the purpose of such development. The items involved here had no relationship to the development of petitioner's mine. The stock sold by the secretary and issued in excess of the authorized capital stock was not a part of the authorized capital structure of petitioner. However, petitioner was legally obligated either to adjust its capital structure to validate the stock in question or to reimburse or satisfy the holders thereof for the moneys received by it for such stock and assessments collected thereon. The moneys so received by petitioner were lost to it through misappropriation or embezzlement by its secretary in the years prior to 1926. Thus petitioner sustained a loss in such prior years in the amount of the moneys so embezzled, but the loss was sustained through the unauthorized and illegal acts of its secretary, entirely separate and apart from the operations in the development of its mines or mineral lands. The proceeds of the sale of the unauthorized stock were not chargeable to capital account in petitioner's mining operations because they were never invested either in the purchase of the mining properties or in the development of such properties.

For the same reasons the moneys collected as assessments on the unauthorized stock were not chargeable to capital account either as capitalized development costs or otherwise.

The item of $10,480.86 claimed by petitioner to be part of the capitalized development costs of its mining operations was money which petitioner's secretary abstracted and embezzled from petitioner's operating funds and was thus prevented from being used as such. The embezzlement was a thing apart from the development operations of the mines. This money, not having been used or lost in such development, can not be capitalized as development costs.

We hold, therefore, that none of the items comprising the amount of $122,239.19 can be charged to capital account, recoverable through depletion.

The second question presented for determination is (1) whether the losses sustained or expenditures made by petitioner through the exchange of valid shares of its stock for unauthorized shares fraudulently issued by one of its officers should be allowed as statutory net losses in the sum of $22,316.55 for 1926 and $31,510.21 for 1927, deductible in subsequent taxable years; or, in the alternative, (2) whether such amounts should be included as part of the capitalized development costs, recoverable through depletion. The amount of $22,316.55 represents the value of 446,331 shares of petitioner's stock which it exchanged for an equal number of shares of outstanding spurious stock in 1926. The market value of petitioner's stock at the time of such exchange was 5 cents per share. The amount of $31,510.21 represents the excess of the market value of 173,133 shares of petitioner's stock on March 3, 1927, the date that amount of borrowed stock was returned to its principal stockholders, over the market value of the same number of shares of its stock on June 12, 1926, the date the stock was borrowed. The value of the stock on June 12, 1926, was 5 cents per share, and the value of such stock on March 3, 1927, was 23.2 cents per share.

Petitioner contends that these amounts represent losses incurred in the operation of a trade or business regularly carried on by it and therefore constitute statutory net losses in 1926 and 1927, respectively, which may be carried forward into the two succeeding years as deductions from gross income in such years. The respondent contends that the losses in question were not so incurred and hence do not constitute statutory net losses, deductible subsequent to the taxable year in which incurred. Assuming without deciding that the items in question represented losses deductible in the taxable years in which incurred, it is necessary to the solution of the question presented to determine whether such losses were incurred in a trade or business regularly carried on by petitioner.

The applicable provisions of the statute are section 117 (a) (1), (b), and (e) of the Revenue Act of 1928.[1]

Petitioner's mine was in the development stage up to March 1, 1928, and up to that date all expenditures were added to capitalized development costs, except expenditures for tangible depreciable assets, as required by article 242 of Regulations 74 hereinabove set out. Petitioner contends that in the development of the mine it was carrying on a business within the meaning of section 117, *supra*, and that the losses in question were incurred in such business and were net losses for the years 1926 and 1927. Assuming, for argument only, the correctness of this contention, the items are not deductible as net losses but recoverable only through depletion deductions as capitalized development costs. Article 242, *supra*; *G. E. Cotton*, 25 B. T. A. 866, 869; cf. *Marsh Fork Coal Co.* v. *Lucas*, 42 Fed. (2d) 83. The principle upon which article 242 rests is that the development of a mine is the development of a capital asset entailing expenditures for original construction and equipment.

However, it is obvious from the facts in this case that petitioner was not engaged in the development of its mining properties as a trade or business regularly carried on, but that such development was merely preliminary to the carrying on of the trade or business of mining after such development had been accomplished. The losses here sought to be deducted as net losses were sustained within the period of the development stage of the mine and not after it had reached a producing status. The losses, not having been incurred in a trade or business regularly carried on by petitioner, are not stat-

---

[1] SEC. 117. NET LOSSES.

(a) *Definition of "net loss"*.—As used in this section the term "net loss" means the excess of the deductions allowed by this title over the gross income, with the following exceptions and limitations:

(1) NON-BUSINESS DEDUCTIONS.—Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall be allowed only to the extent of the amount of the gross income not derived from such trade or business;

\*       \*       \*       \*.       \*       \*       \*

(b) *Net loss as a deduction*.—If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called "second year"), and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year (hereinafter in this section called "third year") ; the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary.

\*       \*       \*       \*       \*       \*       \*

(e) *Net loss for 1926 or 1927*.—If for the taxable year 1926 or 1927 a taxpayer sustained a net loss within the provisions of the Revenue Act of 1926, the amount of such net loss shall be allowed as a deduction in computing net income for the two succeeding taxable years to the same extent and in the same manner as a net loss sustained for one taxable year is, under this Act, allowed as a deduction for the two succeeding taxable years.

utory net losses and not deductible as such. *Harrisburg Hospital, Inc.*, 15 B. T. A. 1014.

The case of *North American Investment Co.*, 24 B. T. A. 419, cited and relied on by petitioner, is not in point on the question of whether such losses constitute net losses deductible in subsequent taxable years, since this question was not involved in that case.

Petitioner contends, in the alternative, that if the items in question totaling the amount of $53,826.76, are not statutory net losses, deductible in subsequent taxable years, they should be charged to capital account as part of development costs, recoverable through depletion.

These items had no connection with the development operations of petitioner's mines. They had to do solely with the adjustment of claims affecting petitioner's capital stock structure and involved no expenditure in connection with petitioner's mining or mine development operations. Therefore, they can not be capitalized as development costs recoverable through depletion allowances.

The third question presented for determination is whether the items of allowable depreciation on petitioner's equipment in the amounts of $1,667.50, $1,759.99, and $308.74 for the years 1926, 1927 and the period January 1 to February 29, 1928, respectively, are deductible in the taxable years here involved as net losses in the taxable years above mentioned, or, in the alternative, chargeable to capital account as development costs recoverable through depletion.

Respondent, in his brief, confesses error in disallowing the items in question as capitalized development costs and admits that they constitute a part of development costs recoverable through depletion, but contends that there is a failure of proof to show the amount of net loss, if any, that was sustained in either of the periods above named. In our view of the case it is unnecessary to consider whether there was a failure of proof of the amount of the claimed net loss based upon the items of allowable depreciation. Since this depreciation was sustained during the development stage of the mine it does not constitute the basis for net loss because such loss was not incurred in a trade or business regularly carried on by petitioner and such depreciation is, therefore, not deductible as net loss. Respondent admits that the items of depreciation constitute a part of development costs recoverable through depletion. We so hold.

*Judgment will be entered under Rule 50.*